## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

Francisco J. Velazquez,

            Plaintiff,

v.                                             Case No. 06-2300-JWL

Tyson Fresh Meats, Inc.,

            Defendant.

### MEMORANDUM & ORDER

Plaintiff Francisco J. Velazquez filed suit against defendant, his current employer, asserting claims of disparate treatment, hostile work environment and retaliation in violation of 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.  Plaintiff also asserts that defendant retaliated against him for filing a workers' compensation claim.  This matter is presently before the court on defendant's motion for summary judgment and to dismiss for lack of subject matter jurisdiction (doc. 27).[1]  As will be explained, the motion is granted in part and denied in part.[2]  Specifically, the court concludes that a trial is required on plaintiff's claims that defendant placed him out of the plant on bid walk in March 2005 based on his age and/or in

--------------------

[1]While defendant's motion is captioned only as a motion for summary judgment, defendant also moves to dismiss certain claims for lack of subject matter jurisdiction.

[2]Plaintiff has filed a motion for oral argument on defendant's motion for summary judgment (doc. 34).  Because the court, in its discretion, concludes that oral argument is unnecessary and would not aid the disposition of defendant's motion, the court denies plaintiff's motion. *See* D. Kan. R. 7.2.

retaliation for filing a workers' compensation claim or sustaining an injury for which he might assert a future claim for such benefits. All other claims are either dismissed for lack of subject matter jurisdiction or are resolved in favor of defendant pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## I.    Facts

The following facts are uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. Plaintiff Francisco J. Velazquez is presently employed by defendant and has worked at the same beef processing facility in Finney County, Kansas since 1983. Plaintiff is Hispanic and was born in Mexico in 1956. He is a United States citizen.

On August 24, 2004, plaintiff suffered an occupational injury for which he submitted a claim for workers' compensation. At that time, he was working in a position known as "loin clipper" and he was earning $12.85 per hour. Following plaintiff's complaints of pain in his shoulders and back, he was placed on light duty and began receiving treatments for his pain (including pain pills, heat packs and massages) from defendant's nurse dispensary. At all times pertinent to plaintiff's claims, Trudi Rash was employed at the Finney County facility as defendant's Complex Nurse Manager in charge of the nurses at the facility. Plaintiff contends that Ms. Rash, during one of her first encounters with plaintiff, said to him, "Do you know why I am here? I am here to clean house with the people on light duty and the people with injuries."

In early November 2004, a medical doctor determined that plaintiff had reached maximum medical improvement (MMI) with respect to the injuries plaintiff suffered in August

2

2004 and the doctor issued permanent medical restrictions for plaintiff.  At that time, defendant advised plaintiff that he would need to find a permanent position within his medical restrictions by bidding on open jobs within his restrictions.[3]  During this same time frame, on November 22, 2004, plaintiff's pay was reduced from $12.85 per hour to $10.85 per hour, a wage that corresponded to the light duty job that plaintiff had been performing since his August 2004 injury.  According to defendant, company policy in effect at that time required such a reduction after an employee was on "light duty" for ninety days.

In December 2004, plaintiff successfully bid the job of "bag miscellaneous" after defendant, according to plaintiff, required him to bid on the position.[4]  Although a medical doctor believed that plaintiff could perform this job within his restrictions, plaintiff contends that his supervisor in the bag miscellaneous position told Ms. Rash that plaintiff could not perform the job within his restrictions.  According to plaintiff, Ms. Rash responded, "I don't care.  He's going to do the job.  The doctor has already given you the doctor release."  Plaintiff further contends that defendant required him to bid for the job despite his own belief that the job was not within his medical restrictions.  In any event, plaintiff reported to work in the bag miscellaneous position on February 21, 2005.  According to plaintiff, he could not perform the

---

[3]Defendant asserts that it maintains a policy requiring an injured employee who has reached MMI to find a permanent position within 30 days and that if the employee has not found a position within 30 days, the employee is sent home (without work, without pay) and is expected to continue looking for available positions.  Plaintiff attempts to controvert this fact.  The dispute is not material as it is uncontroverted that plaintiff found a permanent position, the bag miscellaneous position, within 30 days.

[4]Bid jobs are "won" based on seniority.

job correctly because of his injuries and, in early March 2005, defendant disqualified plaintiff

from the position for failure to perform at the level required for the position.

Shortly thereafter, defendant's managers, including Ms. Rash and Dale Masters, one of

defendant's human resources managers, engaged in a discussion via e-mail concerning "what

to do" with plaintiff in light of the fact that he had DQ'd from the bag miscellaneous position.

In the course of that e-mail exchange, Mr. Masters wrote "If I remember correctly, his IME

[independent medical examination] recommended some 5 more surgeries. I don't think he wants

to work here anymore and we would be better off without him.  I would place [him] off work

under TTD."  Ms. Rash also noted in the exchange plaintiff's "surgical needs."  Ultimately,

defendant concluded that plaintiff "elected to decline" the bag miscellaneous position and placed

him on "bid walk," meaning that plaintiff was placed off work without pay and encouraged to

bid for available jobs on a weekly basis.  On or about April 22, 2005, plaintiff successfully bid

the job of "pick lean from bone belt" and returned to work in that position on or about May 25,

2005.  Plaintiff remains employed in that position to this day and agrees that it is a job he can

do within his medical restrictions.

When plaintiff returned to work in May 2005, he felt he still needed treatment for medical

conditions relating to his August 2004 injury and he typically received treatments before the start

of his work shift.  On July 11, 2005, Ms. Rash entered the nurse dispensary while plaintiff was

receiving treatment from Carla Naeve, a nurse in the dispensary, and directed Ms. Naeve to stop

providing treatment to plaintiff.  Ms. Naeve ceased treating plaintiff.  According to plaintiff,

when he asked Ms. Rash why he was being denied medical treatment, she stated, in essence, that

4

his injuries were age-related rather than work-related and that he was "too old" to work in the plant.  Within a few days of being denied treatment, plaintiff complained to Mitch Young and Sylvia Cohn, both Human Resources managers for defendant, who allegedly confirmed to plaintiff that what he had experienced at the dispensary was "discrimination."

In August 2005, plaintiff filed a charge of discrimination with the Kansas Human Rights Commission and he filed an amended charge in September 2005.  These charges concern the reduction of plaintiff's wages in November 2004, his placement on "bid walk" in March 2005 and the denial of treatment in the dispensary in July 2005.

Additional facts will be related, as necessary, in connection with the court's analysis of defendant's motion and plaintiff's particular claims.


## II.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006).  An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way."  *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).  A fact is "material" when "it is essential to the proper disposition of the claim."  *Id*.

The moving party bears the initial burden of demonstrating an absence of a genuine issue

of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1); *see also Kaster v. Safeco Ins. Co. of Am.*, 2003 WL 22854633, at *2 (10th Cir. Dec. 3, 2003) (affirming the district court's grant of summary judgment in favor of defendant in an ADEA case where the plaintiff had failed to present evidence sufficient for a reasonable jury to conclude that Safeco's employment decisions were age-related); *Young v. White*, 2003 WL 21940941, at *1-2 (10th Cir. Aug. 14, 2003) (affirming district court's grant of summary judgment in favor of defendant in

6

race discrimination and retaliation context).

## III.   Subject Matter Jurisdiction

As a threshold matter, defendant moves to dismiss plaintiff's hostile work environment and retaliation claims asserted under Title VII and the ADEA and plaintiff's Title VII disparate treatment claims for lack of subject matter jurisdiction on the grounds that plaintiff failed to include these claims in his charges of discrimination and, thus, failed to exhaust his administrative remedies with respect to these claims.  It is beyond dispute that plaintiff did not include his hostile work environment or retaliation claims in his charges of discrimination and the court dismisses these claims for lack of subject matter jurisdiction.  *See Shikles v. Sprint/United Management Co.*, 426 F.3d 1304, 1317-18 (10th Cir. 2005) (it is improper for a court to grant summary judgment to a defendant because of a lack of subject matter jurisdiction; proper disposition is to dismiss claims).[5]  The court, however, concludes that the exhaustion requirement has been satisfied with respect to plaintiff's Title VII disparate treatment claims.

It is well established that Title VII and the ADEA require a plaintiff to exhaust his or her administrative remedies before filing suit.  *Id*. at 1317.  The Tenth Circuit has held that a plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under Title VII–not merely a condition precedent to suit.  *Id*. (citation omitted).  The court, then,

---

[5]The dismissal of plaintiff's hostile work environment and retaliation claims under Title VII is without any practical effect as plaintiff asserts these claims under section 1981 as well.

lacks subject matter jurisdiction over Title VII and ADEA claims that are not part of a timely-filed EEOC charge.  *Id.*; *Annett v. University of Kansas*, 371 F.3d 1233, 1238 (10th Cir. 2004).

In his first charge of discrimination, plaintiff checked the "ancestry" and "age" boxes and asserted discrimination as follows:

I.      I am Hispanic. I was born on April 6, 1956, and I am forty-nine (49) years old.

II.      I have been employed by the Respondent since January 31, 1983.  I currently hold the position of Loin Clipper.

         A.      From September 2004, to at least March 22, 2005, I was [sic] been subjected to disparate wages compared to similarly situated Caucasian employees.

         B.      On November 24, 2004, I was demoted.

         C.      On March 22, 2005, I was subjected to an involuntary medical leave of absence.

III.      I hereby charge Tyson Fresh Meats, Inc. and its Representatives with a violation of the Kansas Act Against Discrimination and the Kansas Age Discrimination in Employment Act, in that, I was subjected to disparate wages, a demotion, and an involuntary medical leave of absence due to my ancestry, Hispanic and my age, forty-nine (49).

There are no other allegations contained in the first charge.  Plaintiff's amended charge adds only an allegation that plaintiff, on July 11 and 12, 2005, was "denied services from the nurse dispensary."  Clearly, then, there are no allegations concerning a hostile working environment and Tenth Circuit precedent precludes an argument that plaintiff's retaliation claims are reasonably related to the allegations contained in plaintiff's charges. *See Martinez v. Potter*, 347

F.3d 1208, 1210-11 (10th Cir. 2003). Because plaintiff was required to but did not raise at the administrative level his claims of hostile work environment and retaliation, the court lacks subject matter jurisdiction over those claims. These claims, then, are dismissed.

With respect to plaintiff's Title VII disparate treatment claims, defendant contends that plaintiff's failure to check the "race" or "national origin" boxes is fatal to his attempt to assert claims of race and national origin discrimination. The court disagrees. Although plaintiff checked only the "ancestry" box, the substantive portion of his charges clearly indicates that he is alleging discrimination based on the fact that he is Hispanic, regardless of whether that characteristic defines plaintiff's race, national origin or ancestry. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1411 n.10 (10th Cir. 1997) (claim of discrimination based on Mexican-American ancestry falls within section 1981's protection against racial discrimination); *see also Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 614 (1987) ("[T]he line between discrimination based on 'ancestry or ethnic characteristics' and discrimination based on 'place or nation of ... origin' is not a bright one.") (Brennan, J. concurring). In such circumstances, the purposes underlying the exhaustion requirement–to provide notice of the alleged violation to the charged party, and to provide the administrative agency with the opportunity to conciliate the claim–have been satisfied. *See Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1195 (10th Cir. 2004). The court, then, declines to dismiss these claims.

## IV.    Merits of Plaintiff's Remaining Claims

The court now turns to resolve defendant's motion for summary judgment with respect

to plaintiff's remaining claims–his disparate treatment claims under section 1981, Title VII and the ADEA; his section 1981 hostile work environment and retaliation claims; and his state law workers' compensation retaliation claim.  As will be explained, defendant's motion is denied with respect to plaintiff's claims that defendant placed him out of the plant on bid walk in March 2005 based on his age and/or in retaliation filing a workers' compensation claim or sustaining an injury for which he might assert a future claim for such benefits.  The motion is otherwise granted.

A.      *Disparate Treatment Claims*

The court first addresses plaintiff's disparate treatment claims under section 1981, Title VII and the ADEA.[6]  As plaintiff has no direct evidence of discrimination, his claims are analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006) (Title VII); *Pippin v. Burlington Resources Oil & Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006)

---

[6]For purposes of his section 1981 and Title VII claims, plaintiff asserts in the pretrial order that he was subjected to discrimination on the basis of his "race and/or national origin, Hispanic-American."  Defendant contends that plaintiff's national origin claim is subject to dismissal under section 1981 because discrimination based on national origin falls outside the scope of section 1981.  While defendant is correct that section 1981 does not protect individuals from discrimination based on national origin, *see Aramburu v. Boeing Co.*, 112 F.3d 1398, 1411 n.10 (10th Cir. 1997), plaintiff claims that defendant discriminated against him based on the fact that he is Hispanic.  As such, his discrimination claims fall within section 1981's protection.  *Id.* (claim of discrimination based on Mexican-American ancestry falls within section 1981's protection against racial discrimination).

(ADEA).[7]   Under the *McDonnell Douglas* framework, plaintiff has the initial burden of establishing a prima facie case of discrimination, including that he suffered an adverse employment action.  *See Swackhammer v. Sprint/United Management Co.*, 493 F.3d 1160, 1166 n.8 (10th Cir. 2007); *Antonio*, 458 F.3d at 1181; *Pippin*, 440 F.3d at 1192.  If he establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for each of the adverse employment actions.  *See Antonio*, 458 F.3d at 1181; *Pippin*, 440 F.3d at 1193.  If defendant meets this burden, summary judgment against plaintiff is warranted unless he shows that there is a genuine issue of fact as to whether defendant's reasons are pretextual.  *See Antonio*, 458 F.3d at 1181; *Pippin*, 440 F.3d at 1193; *Medina v. Income Support Div., State of New Mexico*, 413 F.3d 1131, 1136 (10th Cir. 2005).  To show that an employer's proffered nondiscriminatory reason for an employment action is pretextual, "a plaintiff must produce evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Antonio*, 458 F.3d at 1183 (quoting *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 490 (10th Cir. 2006)).

In its motion for summary judgment, defendant first contends that plaintiff cannot

---

[7]It is well established that the elements of plaintiff's claims in this case are the same whether those claims are asserted under Title VII or section 1981.  *See Baca v. Sklar*, 398 F.3d 1210, 1218 n.3 (10th Cir. 2005).

establish a prima facie case of discrimination because, with the exception of the reduction of plaintiff's wages and his March 2005 leave of absence, he has not shown that he suffered an adverse employment action.[8]  In analyzing whether plaintiff has suffered an adverse employment action, the court examines whether plaintiff has shown a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032-33 (10th Cir. 2004).  The Circuit does not consider "a mere inconvenience or an alteration of job responsibilities to be an adverse employment action." *Piercy v. Makata*, 480 F.3d 1192, 1203 (10th Cir. 2007) (quoting *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998)).[9]

Liberally construed, the record reflects that plaintiff is asserting discrimination claims

---

[8]Defendant also contends that plaintiff cannot establish a prima facie case because he has no evidence that similarly situated employees were treated more favorably.  The Tenth Circuit, however, has expressly held that a plaintiff is not required to come forward with evidence of similarly situated employees to establish a prima facie case.  *See Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1195 n.6 (10th Cir. 2000) ("Nothing in the case law in this circuit requires a plaintiff to compare herself to similarly situated co-workers to satisfy the fourth element of her prima facie case.").  The court, then, summarily rejects this argument.

[9]The Supreme Court most recently addressed the contours of adverse employment actions in *Burlington Northern & Santa Fe Ry. v. White*, ___U.S. ___, 126 S. Ct. 2405 (2006). In that case, the Court applied a more lenient standard in analyzing the anti-retaliation provisions of Title VII.  *Piercy v. Maketa*, 480 F.3d 1192, 1203 n.12 (10th Cir. 2007).  The Supreme Court, however, made clear that the substantive discrimination provisions of Title VII are limited "to [adverse] actions that affect employment or alter the conditions of the workplace." *Id.* at 1203. Thus, while *Burlington Northern* modified the retaliation standards for adverse actions, it had no similar effect on the Tenth Circuit's discrimination jurisprudence.  *Id.*

based on defendant's refusal to treat him in the dispensary after July 11, 2005; the ageist comments allegedly made by Ms. Rash at that time; and Mitch Young's purported statement to plaintiff, on one occasion (the timing and context of which is not clear from the record) that "You need to retire and you go back to your country and with the money you're going to have, you can be living like a king in your country." The comments allegedly made by Ms. Rash and Mr. Young do not rise to the level of an adverse action under established Tenth Circuit precedent. *See Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 533 (10th Cir. 1998) (derogatory comments, including several ageist remarks, "are not included within the definition of adverse employment action absent evidence that they had some impact on the employee's employment status"). Significantly, plaintiff has not tied these comments to any alteration in his job status or his compensation. Moreover, defendant's refusal to treat plaintiff in the dispensary after July 11, 2005, while perhaps frustrating to and inconvenient for plaintiff, did not alter the terms of his employment. *See MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005) ("While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit."); *see also Craig v. Lyons Workspace Prods., LLC*, 2005 WL 1027131, at *4 (N.D. Ill. Apr. 22, 2005) (denial of prompt medical treatment does not constitute adverse employment action); *Ramsey v. New York City Health & Hosps. Corp.*, 2000 WL 713045, at *9 (S.D.N.Y. June 2, 2000) (no rational jury could find that delay in receiving medical treatment constitutes an adverse employment action).

The court turns, then, to plaintiff's claims concerning the November 2004 reduction of his wages and his March 2005 leave of absence–actions that defendant concedes are adverse.[10] With respect to these claims, defendant contends that plaintiff cannot show that defendant's proffered reasons for taking the actions are pretextual.  According to defendant, it reduced plaintiff's wages in November 2004 consistent with company policy in effect at the time that required that an employee's pay rate, after 90 days on light duty, be reduced from his or her "master rate" (the pay rate he or she was earning in the job that he or she was performing at the time of the injury) to the pay rate of the light duty job.  With respect to the March 2005 leave of absence, defendant's evidence demonstrates that plaintiff was placed out of the plant on "bid walk" pursuant to a company policy because he had "DQ'd" (disqualified) on the bag miscellaneous job that a physician had approved for him and deemed within his medical restrictions.  Defendant has satisfied its "exceedingly light" burden of production, *see Goodwin v. General Motors Corp.*, 275 F.3d 1005, 1013 (10th Cir. 2002), and the burden shifts back to plaintiff to demonstrate that defendant's proffered reasons are pretextual.  *See Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006).

While plaintiff dedicates nearly five pages of his response to an argument entitled

---

[10]The argument portion of plaintiff's response to the motion for summary judgment is devoid of any reference to the March 2005 leave of absence.  The court excuses plaintiff's briefing deficiencies only because arguments pertinent to this claim are contained in piecemeal fashion in connection with his statement of facts and his response to defendant's statement of facts.  Plaintiff's failure to directly address this claim in the argument portion of his brief, however, has greatly increased the amount of time the court has had to spend resolving defendant's motion and plaintiff's counsel is strongly advised to rethink his approach to the summary judgment process.

14

"Plaintiff's Evidence of Pretext," the vast majority of that  response contains only broad statements of the law concerning pretext.  Only two sentences concern the facts of this case, one of which is entirely conclusory and simply states that plaintiff "factually contradicts" defendant's witnesses.  After painstakingly reviewing plaintiff's response to defendant's factual paragraphs and plaintiff's own factual statements, the court discerns only one piece of evidence that arguably could show pretext with respect to defendant's policy concerning the reduction of an employee's wages after 90 days on light duty status.  In that regard, plaintiff contends in his deposition that a Caucasian employee told plaintiff that he had been working light duty longer than plaintiff (so, presumably longer than 90 days) and defendant had not reduced his wage.  Plaintiff's testimony, however, is hearsay and, thus, not competent Rule 56 evidence.  Moreover, there is simply no evidence that any of the managers who allegedly made inappropriate comments to plaintiff about his race or age were involved in any way in the decision to reduce plaintiff's wages in November 2004.  Summary judgment, then, is appropriate on this claim.

With respect to defendant's policy concerning placing an employee out of the plant on bid walk once that employee DQ's on a job within his or her medical restrictions, the court has again reviewed in detail plaintiff's assertions of fact and responses to defendant's facts.  While plaintiff has come forward with evidence that this "policy" was, in fact, discretionary and that defendant could have opted to permit plaintiff to return to light duty work while continuing to obtain another permanent position within his restrictions, he has come forward with no evidence that defendant exercised its discretion to place plaintiff out of the plant based on any racial animus.

With respect to his age claim, however, plaintiff's evidence reflects that Ms. Rash told plaintiff that his injuries were age-related, told plaintiff that he was "too old" to be working at the plant and essentially forced plaintiff to take the bag miscellaneous position despite the fact that the supervisor for the position advised Ms. Rash that plaintiff would not be able to do the job within his restrictions. The evidence further reveals that Ms. Rash took part in the decision to place plaintiff on bid walk after he DQ'd from the bag miscellaneous position that, arguably, she knew he would not be able to perform. A permissible inference from this evidence and Ms. Rash's alleged comments is that Ms. Rash had preconceived notions based on plaintiff's age regarding plaintiff's abilities to perform work at the plant and, with others, ultimately placed plaintiff on bid walk at least in part based on her bias. *See Stone v. Autoliv ASP, Inc*., 210 F.3d 1132, 1140-41 (10th Cir. 2000) (citing *Tomsic v. State Farm Mut. Auto. Ins. Co.*, 85 F.3d 1472, 1479 (10th Cir. 1996)). In sum, the court concludes that plaintiff's evidence, taken as a whole, is sufficient to cast some doubt on defendant's proffered reason for placing plaintiff out of the plant. Summary judgment is, therefore, denied.

B.    *Hostile Work Environment*

Plaintiff contends that defendant created and maintained a hostile working environment toward Hispanic and/or Mexican-American employees, including plaintiff, in violation of section 1981.[11] To survive defendant's motion for summary judgment on this claim, plaintiff "must

---

[11]Defendant argues that plaintiff's hostile work environment claim under section 1981 is subject to summary dismissal because plaintiff asserted that claim for the first time in the

show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *McCowan v. All Star Maintenance, Inc.*, 273 F.3d 917, 923 (10th Cir. 2001) (citations and quotations omitted).  The plaintiff must show that he was "targeted for harassment because of his race or national origin." *Herrera v. Lufkin Indus., Inc*., 474 F.3d 675, 680 (10th Cir. 2007) (quoting *Sandoval v. City of Boulder*, 388 F.3d 1312, 1326-27 (10th Cir. 2004)).   In evaluating whether the alleged harassment is sufficiently severe or pervasive, the court looks at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *See Trujillo v. University of Colorado Health Sciences Center*, 157 F.3d 1211, 1214 (10th Cir. 1998) (quoting *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 23 (1993)).  The court analyzes the atmosphere both objectively and subjectively, looking at all the circumstances from the perspective of a "reasonable person in the plaintiff's position." *McCowan*, 273 F.3d at 923 (quoting *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75,

---

pretrial order.  The court disagrees and finds that this claim was set forth in plaintiff's initial complaint.  Specifically, plaintiff asserted in "Count 1" of his initial complaint his section 1981 claims, asserting in paragraph 20 that defendant "deprived plaintiff of his rights and to the full and equal enjoyment of the benefits of employment with defendant because of his race and/or national origin, Hispanic-American."  In the next paragraph of his complaint, paragraph 21, plaintiff states "Said deprivations by defendant include . . . retaliating against plaintiff, subjecting plaintiff to and/or permitting *racially motivated harassment* and retaliation, and failing to pay plaintiff comparably with other employees of equal seniority and experience." (emphasis added).

81 (1998)).

In the argument portion of his response, plaintiff appears to base his section 1981 hostile work environment claim solely on the alleged comment made by Mitch Young that "You need to retire and you go back to your country and with the money you're going to have, you can be living like a king in your country."   This isolated comment (plaintiff identifies no other comments concerning his race or national origin) quite obviously falls far short of the "steady barrage" required for a hostile work environment claim.  *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005).  While plaintiff also complains generally about being placed on "bid walk" for two months, about the reduction of his wages and about defendant's refusal to treat him at the dispensary, plaintiff has not come forward with evidence to support an inference that defendant's actions stemmed from racial animus.  *See Trujillo*, 157 F.3d at 1214-15 (affirming summary judgment for defendant on racial harassment claim where plaintiff's evidence was "insufficient to create a jury question that his stressful working conditions were inflicted upon him because of racial animus"); *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) (plaintiff's racial harassment claim failed where plaintiff did not show that ridicule stemmed from racial animus).[12]  For the foregoing reasons, summary judgment is warranted on plaintiff's section 1981 hostile work environment claim.

---

[12]While plaintiff testified that Mr. Young and Ms. Cohn agreed with plaintiff that defendant's refusal to treat him at the dispensary was "discrimination," plaintiff's testimony does not indicate whether his discussions with Mr. Young and/or Ms. Cohn concerned race, age, injury or any other potential basis for discrimination.  Plaintiff, then, has not come forward with evidence that any conduct engaged in by defendant was based on plaintiff's race.

C.    *Retaliation*

Plaintiff contends in the pretrial order that defendant retaliated against him for complaining about racial discrimination in violation of section 1981. To establish a prima facie case of retaliation, plaintiff must show that he engaged in protected opposition to discrimination; that defendant took an adverse employment action against him which a reasonable person would have found materially adverse; and that a causal connection exists between the protected activity and the materially adverse action. *See Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006) (citing *Argo v. Blue Cross & Blue Shield of Kan., Inc*., 452 F.3d 1193, 1202 (10th Cir. 2006) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, ___ U.S. ___, 126 S. Ct. 2405 (2006))). In its motion for summary judgment, defendant contends that summary judgment is appropriate on this claim because plaintiff has not shown that he suffered any adverse employment action after engaging in activity protected under section 1981.[13]

Plaintiff engaged in protected opposition to discrimination when he filed his charges of discrimination on August 8, 2005 and September 15, 2005 and when he made internal complaints of discrimination in mid-July 2005 concerning defendant's refusal to treat him at the

---

[13]In its reply brief, defendant asserts an additional argument that it did not raise in its opening brief–that retaliation claims are not viable under section 1981. For purposes of summary judgment, defendant has waived this argument. *See Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003) (argument raised for the first time in reply brief is waived) (citing *Coleman v. B-G Maintenance Management*, 108 F.3d 1199, 1205 (10th Cir. 1997) (issues not raised in the opening brief are deemed abandoned or waived)).

dispensary.[14]  The record does not reveal any actions that would rise to the level of an adverse

employment action that occurred at any time after mid-July 2005 and plaintiff does not contend

that any such actions occurred after mid-July 2005.  Indeed, in his response to defendant's

motion, plaintiff identifies only two potentially adverse actions–defendant's refusal to treat him

at the dispensary in July 2005 and defendant's reduction of plaintiff's wages in November 2004.

Both of these actions took place before plaintiff engaged in activities protected under section

1981.  Plaintiff, then, cannot establish a causal connection between any protected activity and

an adverse employment action.  *See Fasold v. Justice*, 409 F.3d 178, 195 (10th Cir. 2005) ("The

essence of protected activity is that it take place prior to the adverse employment action.").

Summary judgment is appropriate on this claim.


D.      *Workers' Compensation Retaliation*

        Plaintiff's final claim is that defendant retaliated against him for filing a workers'

_____

[14]In his response, plaintiff asserts that his protected activities include filing a workers'
compensation claim, complaining to defendant's managers about age discrimination and
complaining to defendant's managers about workers' compensation retaliation.  These
activities, however, are not "protected" for purposes of plaintiff's section 1981 retaliation
claim.  *See Anderson v. Academy Sch. Dist. 20*, 2004 WL 2757938, at *3 (10th Cir. Dec. 3,
2004) (filing of grievance was not protected activity for purposes of Title VII retaliation
claim where subject of grievance failed to include allegation of mistreatment motivated by
any category protected by Title VII; thus, even if supervisor retaliated against plaintiff for
filing grievance, that retaliation was not unlawful under Title VII); *Washington v. American
Stores Co.*, 2000 WL 1234310, at *1 (7th Cir. Aug.30, 2000) (plaintiff's NLRB appeal could
not form the basis for her retaliation claim under Title VII as Title VII protects from
retaliation only those complaints of unlawful employment practices that are proscribed by
Title VII).

compensation claim.  Kansas courts apply the *McDonnell Douglas* burden-shifting framework to workers' compensation retaliation claims.  *Proctor v. U.P.S.*, ___ F.3d ___, 2007 WL 2705344, at *9 (10th Cir. Sept. 18, 2007) (citations omitted).  Under this framework, plaintiff must establish a prima facie case of retaliation.  *Id.* (citation omitted).  Specifically, he must establish that (1) he filed a claim for workers' compensation benefits or sustained an injury for which he might assert a future claim for such benefits; (2) defendant had knowledge of plaintiff's claim or injury; (3) defendant discharged or demoted plaintiff; and (4) a causal connection exists between the protected activity or injury and the discharge or demotion.  *Id.*; *Brigham v. Dillon Cos., Inc.*, 262 Kan. 12 (1997) (extending workers' compensation public policy exception to include retaliatory demotion).  If plaintiff meets this burden, defendant must come forward with a legitimate, nonretaliatory reason for the discharge or demotion.  *See Proctor*, ___ F.3d at ___, 2007 WL 2705344, at *9.  Plaintiff then has the burden of showing "by a preponderance of the evidence" that this legitimate reason is a pretext for retaliation in violation of state law.  *Id.* (citations and quotations omitted).

Defendant concedes for purposes of its motion that the reduction of plaintiff's wages and plaintiff's March 2005 leave of absence constitute the requisite "discharge or demotion" for purposes of Kansas law.[15]  Nonetheless, defendant urges that plaintiff cannot establish a prima

───────────────────

[15]To the extent that plaintiff is attempting to assert workers' compensation retaliation claims based on any other conduct, including various comments made by managers or defendant's refusal to treat plaintiff at the dispensary, plaintiff makes no argument that these actions are equivalent to a discharge or demotion under Kansas law and the court is convinced that Kansas courts would not recognize such claims.

facie case of retaliation because he cannot establish the requisite causal connection between his

protected activity or injury and the adverse actions, citing the three-month gap between his claim

or injury and his wage reduction and the seven-month gap between his claim or injury and his

bid walk.  The court agrees that plaintiff cannot establish a causal connection for purposes of his

wage reduction claim.  Significantly, plaintiff has no evidence that any of the individuals who

made comments about his injury or workers' compensation claim played any role in the decision

to reduce his wages and, without more, the three-month gap in time is insufficient.  *See Piercy*

*v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007) (noting that the Circuit has found a proximity

of three months insufficient to support "a presumption of causation"); *Anderson v. Coors*

*Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) ("[W]e have held that a three-month period,

standing alone, is insufficient to establish causation.") (citing *Richmond v. ONEOK, Inc.*, 120

F.3d 205, 209 (10th Cir. 1997)).  Summary judgment on this claim, then, is granted.

    With respect to his March 2005 bid walk claim, however, plaintiff has come forward with

evidence tying the decision to place him out of the plant to his injury.[16]  Specifically, plaintiff

has come forward with evidence of an e-mail exchange among various managers including Dale

Masters and Ms. Rash concerning "what to do" with plaintiff in light of the fact that he DQ'd

from the bag miscellaneous position.  Both Mr. Masters and Ms. Rash reference plaintiff's need

for multiple surgeries.  A reasonable jury could conclude, based on the e-mail exchange, that

plaintiff's injury was considered in connection with the decision-making process.  Moreover,

---

[16]The seven-month gap highlighted by defendant, then, is not dispositive.

plaintiff's evidence, while disputed by defendant, is that Ms. Rash–who was involved in the decision to place plaintiff out of the plant on bid walk–bragged to plaintiff about her desire to "clean house" with respect to injured employees and light duty employees and that Ms. Rash forced plaintiff to accept the bag miscellaneous position despite knowledge that he could not perform that position within his restrictions.

Turning to the second and third steps of the burden-shifting framework, defendant, as noted above, has pointed to evidence that it had a legitimate, nonretaliatory reason for placing plaintiff on bid walk–its reliance on company policy requiring that approach after an employee DQ's from a position within his or her medical restrictions.  But, as the causal-connection discussion above shows, plaintiff has come forward with evidence that defendant's proffered reason is pretextual.  *See Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1319 (10th Cir. 2006) (relying on same evidence to support causation and pretext) (citing *Wells v. Colo. Dept. of Transp.*, 325 F.3d 1205, 1219 (10th Cir. 2003) (acknowledging that in some cases, evidence of causation and evidence of pretext may be the same and the tests for causation and pretext may be conflated)).  Summary judgment, then, is inappropriate.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 27) is granted in part and denied in part.  Specifically, the court concludes that a trial is required on plaintiff's claims that defendant placed him out of the plant on bid walk in March 2005 based on his age and/or in retaliation for filing a workers' compensation claim or sustaining an injury for which he might assert a future claim for such

benefits.  All other claims are either dismissed for lack of subject matter jurisdiction or are resolved in favor of defendant pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff's motion for oral argument (doc. 34) is denied.

**IT IS SO ORDERED.**

Dated this 12th  day of October, 2007, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge